UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARISSA JOHNSON,

     Plaintiff,

v.                                  Case No: 8:23-cv-549-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

    Plaintiff Clarissa Johnson seeks judicial review of the denial of her claim for supplemental security income.  As the Administrative Law Judge's (ALJ) decision was not based on substantial evidence and did not employ proper legal standards, the decision is reversed.

## BACKGROUND

### A.    Procedural Background

    Plaintiff filed an application for supplemental security income on December 3, 2020.  (Tr. 206–12.)  The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 74–89, 93–100.)  Plaintiff then requested an administrative hearing. (Tr. 117.)  Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 43–68.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's

claim for benefits.  (Tr. 8–26.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–7.)  Plaintiff then timely filed a complaint with this Court.  (Dkt. 7.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  Before the court are Plaintiff's brief in opposition to the Commissioner's decision (Dkt. 17), Defendant's brief in support of the Commissioner's decision (Dkt. 18), and Plaintiff's reply brief (Dkt. 19).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1988, claimed disability beginning on November 1, 2020.  (Tr. 74, 93.)  Plaintiff has earned her General Educational Diploma (GED) and has past relevant work experience as a fast food worker, waitress, and dancer.  (Tr. 46, 63.)  Plaintiff alleged disability due to an irregular heartbeat, neuropathy, nerve damage, hypertension, post-traumatic stress disorder (PTSD), bipolar disorder, anxiety, and depression.  (Tr. 75, 93.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since December 3, 2020, the application date.  (Tr. 13.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: spine disorders, depression, anxiety, bipolar disorder, and PTSD.  (Tr. 13.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13–16.)  The ALJ

then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she can:

> lift and/or carry 20 pounds occasionally and up to 10 pound frequently; sit for 6 hours; stand and/or walk for 6 hours; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; stoop, kneel, crouch, and crawl occasionally; never work at unprotected heights or with moving mechanical parts; must avoid concentrated exposure to extreme cold and working in or around vibration; must avoid hazards in the workplace such as heights and heavy moving machinery; able to perform simple, routine, and repetitive tasks; make simple work-related decisions; frequently interact with supervisors; occasionally interact with co-workers in that the claimant is able to work in the same work area as co-workers, but unable to perform any job tasks that would require interaction with co-workers; unable to work in tandem with co-workers; no interaction with the general public; and able to tolerate gradual changes in the work setting.

(Tr. 16.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 17.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform her past relevant work.  (Tr. 20.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as electronics worker, plastics assembler, and injection molding tender.

(Tr. 20–21.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 21–22.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform

his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d

at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to adequately consider the medical opinion of Advanced Registered Nurse Practitioner (ARNP) Jacquelyn Delgado; (2) the ALJ failed to adequately consider the combination of Plaintiff's impairments, including symptoms from her traumatic brain injury; and (3) the ALJ failed to adequately develop the record with respect to Plaintiff's impairments.  (Dkt. 17.)  For the following reasons, Plaintiff's second and third contentions warrant remand.

### A. Consideration of Medical Opinion Evidence

Plaintiff argues that the ALJ erred in finding that ARNP Delgado's medical opinion evidence was "only somewhat persuasive." (Dkt. 17 at 13–17.)  Specifically, Plaintiff argues that the ALJ relied only on mental status examinations to discount ARNP Delgado's opinion and should have afforded the opinion controlling weight. (*Id.*)  Defendant responds that the ALJ complied with the applicable regulations and acted reasonably and within her discretion in finding ARNP Delgado's opinions somewhat persuasive because the opinions were rendered on a check-box form that was vague and ARNP Delgado provided no support for her opinions.  (Dkt. 18 at 7–

10.)  Upon consideration, the court finds that the ALJ properly considered ARNP Delgado's opinions under the applicable regulations.

Prior to March 17, 2017, an ALJ was required to assign greater weight to the opinions of treating physicians.  This rule, referred to as the "treating physician rule" required the ALJ to assign controlling weight to the opinion of a treating physician if the opinion was well-supported and not inconsistent with the other evidence in the record.  If an ALJ assigned less than controlling weight to a treating physician, the ALJ was required to provide good cause for doing so.  *See Winchel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

However, the new SSA regulations, published on January 18, 2017, and effective on March 27, 2017, apply to this case and eliminate the treating physician rule.  20 C.F.R. § 416.920c; *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022) (affirming that new regulations eliminated treating physician rule and apply to applications filed after effective date).  Plaintiff filed her application for benefits on December 3, 2020 (Tr. 206–12), and the revised regulations therefore apply to her claim.  *See* 20 C.F.R. § 416.920c; *Harner*, 38 F.4th at 898.

When considering medical opinion evidence submitted by a medical source under the revised regulations, an ALJ must "articulate . . . how persuasive [it] find[s] all of the medical opinions . . . in [the] case record," consistent with the standards in 20 C.F.R. § 416.920c.  20 C.F.R. § 416.920c(a)–(b).  The ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s)," including those from a claimant's medical sources. *Id.*; *see also Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) ("Under the new regulatory scheme, the ALJ must articulate how persuasive he finds each medical opinion, but he no longer must assign more weight to a treating source's medical opinion or explain why good cause exists to disregard it."). Instead, the regulations provide "several factors for determining what weight to give a claimant's proffered medical opinions." *Harner*, 38 F.4th at 897 (citing 20 C.F.R. § 404.1520c(c)(1)–(5)). While there are several factors the ALJ must consider, "[t]he most important factors" are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Under the revised regulations, the ALJ must therefore explain how it "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," but need not discuss any of the other factors. 20

- 8 -

C.F.R. § 416.920c(b)(2); *see Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *3 (11th Cir. Dec. 28, 2023) ("The ALJ must explain how he analyzed the supportability and consistency of a medical source's opinion but is not required to explain the other factors in paragraph (c)."). "The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation." *Rivera v. Kijakazi*, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) (citing *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted,* 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)).

According to the record, Plaintiff began treatment with ARNP Delgado in April 2020 and underwent a psychiatric evaluation at that time. (Tr. 648–55.) Plaintiff continued treatment with ARNP Delgado in November 2020, May 2021, August 2021, and April 2022. (Tr. 648–50, 657–62, 862–64, 868–70, 879–81, 913–15, 919–21.) On August 4, 2021, ARNP Delgado completed a Mental Residual Functional Capacity Assessment of Plaintiff. (Tr. 826–27.) In the assessment, ARNP Delgado noted that Plaintiff had "moderate" or "severe" limitations in 18 of 21 areas of mental functioning and that there were several work-related stressors that would further increase her level of impairment. (Tr. 826–27.) The assessment defined "moderate" as being "somewhat impaired" and "severe" as being "not totally precluded but []
substantially impaired in terms of speed or accuracy of carrying out the task and can only be engaged in occasionally or seldom during an eight[-]hour day[.]" (Tr. 826.)

In determining Plaintiff's RFC, the ALJ considered ARNP Delgado's assessment and found it to be "only somewhat persuasive." (Tr. 19.) Specifically, the ALJ stated:

> Jacquelyn Delgado, PMHNP completed a medical source statement in August 2021 and opined that the claimant has severe impairments in understand and memory, moderate to severe impairments in sustained concentration and persistence, moderate limitations with social interaction, moderate impairments in adaptation, and severe limitations with the ability to respond appropriately to unexpected changes in the work setting and routine (B6F). The undersigned finds this assessment to be only somewhat persuasive as it is more restrictive than what is consistent with the evidence of record. The evidence of record supports the above residual functional capacity as mental status examinations consistently noted that the claimant had euthymic mood, intact concentration, and intact recent and remote memory.

(Tr. 19.)

Upon consideration, the court finds that the ALJ's analysis of ARNP Delgado's opinions is sufficient to demonstrate compliance with the applicable regulations and is supported by substantial evidence.[1] Initially, Plaintiff does not argue that the ALJ failed to address the "consistency" and "supportability" factors and instead argues that the ALJ erred in relying solely on mental status examination findings to find ARNP Delgado's opinions partially persuasive. (Dkt. 17 at 13–17.) In support, Plaintiff relies

---

[1] In making this finding, the court has not considered the Commissioner's arguments that ARNP Delgado's opinions are vague and should be discounted because they were issued on a "check-box form" with "no supporting explanation." *See* (Dkt. 18 at 7–8.) The court cannot rely on the post-hoc rationalizations offered by the Commissioner on appeal. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) ("[The Court] cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

on *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021) to argue that "findings on mental status examinations do not equate to an inability to function in a full-time job." (Dkt. 17 at 15–16.)  However, as the Eleventh Circuit has recognized, in *Simon*, the "Court applied 20 C.F.R. § 404.1527(c)(2)'s treating physician rule because the claimant's application was filed in March 2015." *Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3 n.2 (11th Cir. Dec. 21, 2022). The SSA's revised regulations, as applicable to Plaintiff's claim, "eliminated the treating physician rule" and an ALJ must not give controlling weight to a treating physician's opinions and need not provide good cause for declining to do so. *Harner*, 38 F.4th at 897 (citing 20 C.F.R. § 404.1520c(a)).

Here, although the ALJ's decision does not specifically reference the "supportability" factor, the decision makes clear that the ALJ considered both the supportability and consistency of ARNP Delgado's opinions.  See *Cook*, 2021 WL 1565832, at *5 ("While he may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of Dr. Birkmire's opinions and findings regarding the record was based on those factors.").  Specifically, in finding ARNP Delgado's opinion "only somewhat persuasive" the ALJ found the assessed limitations to be inconsistent with mental status examinations found throughout the record, including those conducted by ARNP Delgado.  (Tr. 19); *see Brodeur v. Comm'r of Soc. Sec.*, No. 5:22-cv-384-PRL, 2023 WL 5125198, at *4 (M.D. Fla. Aug. 10, 2023) ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical

opinions or prior administrative medical findings[.]") (quoting *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022)).

In determining Plaintiff's RFC, the ALJ discussed Plaintiff's mental health records in detail, including those records from ARNP Delgado and other providers. (Tr. 18–19.)  The ALJ explicitly considered ARNP Delgado's psychiatric evaluation of Plaintiff in November 2020 and found that "[m]ental status examination revealed that [Plaintiff] has intact recent and remote memory, exhibit[ed] appropriate behavior, had intact concentration, [] euthymic mood . . . her thought processes were organized and thought content was logical."  (Tr. 18 (citing Tr. 657, 662).)  The ALJ further discussed Plaintiff's treatment with ARNP Delgado in May 2021, in which her mental status "was also within normal limits except for limited insight and anxious mood" and Plaintiff's "behavior was appropriate, concentration was intact, [recent] and remote memory were intact, and she had organized thought processes."  (Tr. 18 (citing Tr. 870).)  The ALJ also considered Plaintiff's mental condition as assessed by other providers, including a follow-up appointment with her primary care in February 2021 where she was noted to have no neurological defects (Tr. 861), and findings during a consultative examination in December 2021 in which Plaintiff's "cognition was normal, and she had normal mood and affect with no anxiety."  (Tr. 895.)

Thus, the ALJ's decision demonstrated application of the appropriate legal framework and substantial evidence supported the decision to find the severe impairments noted by ARNP Delgado to be only somewhat persuasive.  *See, e.g.,*

*Hickman v. Comm'r of Soc. Sec.*, No. 6:22-cv-2267-PGB-LHP, 2023 WL 9197938, at *8 (M.D. Fla. Dec. 18, 2023) ("Despite Claimant's assertion that the ALJ's 'explanations are not accurate or logical,' what Claimant really asks is for the Court to reweigh the evidence, which is not within the province of this Court."), *report and recommendation adopted,* 2024 WL 128018 (M.D. Fla. Jan. 11, 2024); *St. Jacques v. Comm'r of Soc. Sec.*, No. 3:22-cv-98-MAP, 2023 WL 2583294, at *7 (M.D. Fla. Mar. 21, 2023) ("[T]he ALJ demonstrated that she fully considered the treatment history from Dr. Martin and Dr. Mantineo, which goes to the supportability factor, along with the other evidence of record, which goes to the consistency factor, in setting forth Plaintiff's RFC."). To the extent Plaintiff identifies other evidence in the record that she contends bolsters ARNP Delgado's opinion, the court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."); *Miles*, 84 F.3d at 1400 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

## B. Consideration of All Impairments

Plaintiff argues that the ALJ erred by failing to consider the combination of her impairments in the latter steps of the sequential evaluation process. (Dkt. 17 at 17–19.) Specifically, Plaintiff argues that the ALJ failed to adequately consider her traumatic brain injury and related symptoms, including facial pain and headaches, in formulating her RFC. (*Id.*; Dkt. 19 at 2–3.) Defendant responds that any error in

finding Plaintiff's traumatic brain injury to be non-severe at step two was harmless and that substantial evidence supported the ALJ's findings at steps two and five. (Dkt. 18 at 10–13.) Upon consideration, the court agrees with Plaintiff and finds that remand is warranted on this basis.

At step two of the sequential evaluation process, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). The ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. *Phillips*, 357 F.3d at 1237 (citing 20 C.F.R. § 404.1520(c)). If an ALJ errs in finding that an impairment is non-severe at step two, such error is harmless if the ALJ finds that the claimant has any severe impairment and continues in the sequential evaluation process. *See Heatly v. Comm'r Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010); *Tuggerson-Brown v. Comm'r Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.").

Following step two, the ALJ must "consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951; *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). The ALJ's failure to consider

the combination of a claimant's impairments requires reversal. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985); *see* 20 C.F.R. § 416.945 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). The ALJ is not required to refer to every piece of evidence, so long as the ALJ provides sufficient reasoning for the reviewing court to evaluate whether the ALJ considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021); *see also Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F. 4th 1054, 1064 (11th Cir. 2021) (citing Social Security Regulation (SSR) 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996)). "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Schink*, 935 F.3d at 1269 (citing *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984)).

Upon review, the court finds that the ALJ's decision does not sufficiently demonstrate consideration of the combination of Plaintiff's impairments in formulating her RFC. At step two, the ALJ found that Plaintiff had severe impairments of spine disorders, depression, anxiety, bipolar disorder, and PTSD. (Tr. 13.) The ALJ did not discuss Plaintiff's traumatic brain injury, nor did the ALJ identify any non-severe, medically determinable impairments at step two. (Tr. 13.) The ALJ then found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Tr.

13–16.)  In so finding, the ALJ utilized the Psychiatric Review Technique (PRT) and assessed Plaintiff's mental impairments "singly and in combination" in the four broad areas of mental functioning or "paragraph B" criteria."  (Tr. 13–16.)  However, the ALJ acknowledged that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (Tr. 16.)  The ALJ continued that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning."  (Tr. 16.)

Nevertheless, despite stating that she "considered all symptoms" in formulating Plaintiff's RFC, the ALJ's decision does not sufficiently demonstrate consideration of Plaintiff's traumatic brain injury and associated pain and headaches.  *See Pupo*, 17 F.4th at 1064 ("[A]lthough the ALJ stated he 'considered all symptoms,' his decision demonstrates that he did not.").  The Commissioner acknowledges that the medical records reflect a diagnosis of "personal history of traumatic brain injury" resulting from Plaintiff's 2010 domestic violence injury and surgery.  (Dkt. 18 at 11.)  Indeed, as Plaintiff notes, the record contains several references to her traumatic brain injury, and Plaintiff complained of "severe headaches" and symptoms from her traumatic brain injury during the hearing.  *See* (Tr. 51, 54–55); *e.g.,* (Tr. 654, 658, 661, 669, 914, 938.)  However, the ALJ's only mention of Plaintiff's traumatic brain injury in formulating her RFC is in discussing Plaintiff's testimony at the hearing.  (Tr. 17).

- 16 -

Specifically, the ALJ stated that Plaintiff "indicated that she suffered a traumatic brain injury and has difficulties being in large crowds" and that "she was involved in a domestic violence encounter that result[ed] in reconstructive surgery on her face" and as a result "she experiences nightmares and difficulties with memory." (Tr. 17.) The ALJ's decision does not address Plaintiff's complaints of "severe headaches" at all, nor does the ALJ reference Plaintiff's traumatic brain injury or related symptoms in discussing the impacts of Plaintiff's physical or mental impairments in her residual functional capacity. (Tr. 16–20.) The court therefore finds that the ALJ has failed to provide sufficient reasoning to demonstrate that she considered the combination of Plaintiff's impairments in formulating her RFC or that the ALJ considered Plaintiff's medical condition as a whole. *See* 20 C.F.R. § 416.945(a)(2); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) ("The ALJ must address the degree of impairment caused by the 'combination of physical and mental medical problems.'"); *see, e.g.*, *Roberson v. Kijakazi*, No. 8:20-cv-167-CPT, 2021 WL 9036513, at *5 (M.D. Fla. Sept. 30, 2021) ("Other than alluding to a brain MRI showing 'only 'mild atrophy'' and scattered references to 'normal neurological signs/findings' by the Plaintiff's neurologists, the ALJ's RFC evaluation omits any examination of the extent to which the Plaintiff's medically determinable impairments of depression, anxiety, and 'decreased cognitive abilities' altered her vocational capacity."); *Rivas v. Saul*, No. 8:20-CV-282-JSM-TGW, 2021 WL 2143651, at *4 (M.D. Fla. May 7, 2021) ("[T]he law judge was required to evaluate the diagnoses of TBI and residual headaches,

determine whether the conditions are medically determinable impairments and, if so, the severity of those impairments.   He certainly did not do that."), *report and recommendation adopted,* 2021 WL 2138884 (M.D. Fla. May 26, 2021).

Defendant argues that any error by the ALJ in finding that Plaintiff's traumatic brain injury was not severe at step two was harmless.  (Dkt. 18 at 10–13.)  However, regardless of whether her traumatic brain injury was a severe impairment "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."  *Schink*, 935 F.3d at 1269 (citing *Bowen*, 748 F.2d at 634–35). Defendant further contends that the state agency medical consultants considered Plaintiff's traumatic brain injury at the initial and reconsideration levels and found there to be "no evidence of significant intellectual deficits."  (Dkt. 18 at 11 (citing (Tr. 79, 95, 97).)  However, the court "cannot affirm based on a post hoc rationale that might have supported the ALJ's conclusion."  *Watkins*, 457 F. App'x at 872 (internal quotations omitted).  The ALJ did not address the state agency consultants findings with respect to Plaintiff's traumatic brain injury in formulating Plaintiff's RFC, and the court will not substitute its judgment for that of the ALJ.  *See Schink*, 935 F.3d at 1269 ("Even the most favorable interpretation of the ALJ's opinion—namely, that the ALJ considered Schink's mental conditions in the RFC assessment sub silentio and implicitly found that they imposed no significant limitations on his work-related mental capacities—would not permit us to affirm because, as our precedent holds, the ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal' in its own right.") (quoting *Keeton*, 21 F.3d at 1066); *see also Rivas*, 2021 WL 2143651, at *3 ("[I]f the law judge discounted that evidence, he needed to give an explanation for his determination.") (citing *Luckey v. Astrue*, 331 F. App'x 634, 639 (11th Cir. 2009)).

Accordingly, the court finds that remand is warranted for further consideration of Plaintiff's RFC in light of all of Plaintiff's medically determinable impairments.

## C. Duty to Develop Record

Plaintiff argues that the ALJ failed to fulfill her duty to fully and fairly develop the record. (Dkt. 17 at 19–20.) Specifically, Plaintiff argues that after requesting records from the Lakeland Regional Medical Center from January 1, 2010 to the present, the ALJ failed to follow-up with Lakeland Regional after only records from 2022 were provided. (*Id.*) Defendant responds that Plaintiff has made no showing of prejudice for the period at issue and the evidence of record was sufficient for the ALJ to make an informed decision. (Dkt. 18 at 13–14.) Upon consideration, the court agrees with Plaintiff and finds that the ALJ should request further records on remand.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ is required to develop a complete medical history for at least the 12 months preceding the claimant's application for disability unless "there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 416.912(b)(1). However, the claimant bears the burden of proving that she is disabled, and she is responsible for

producing evidence to support her claim.  *See Ellison*, 355 F.3d at 1276.  The ALJ need not seek additional evidence "as long as the record contains sufficient evidence . . . to make an informed decision."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *see also Tomblin v. Berryhill*, No. 3:17-cv-635-GMB, 2018 WL 5114143, at *5 (M.D. Ala. Oct. 18, 2018) (holding that an ALJ is "not required to order additional tests [if] the record contain[s] sufficient evidence for an informed decision" and the claimant relies on speculation rather than on a "show[ing] [of] clear prejudice or unfairness") (citations omitted).  In evaluating the necessity for remand on this basis, courts look to see "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

Here, at Plaintiff's request (Tr. 316), the SSA requested records from Lakeland Regional Medical Center on July 18, 2022 "covering the period of: 01/01/2010 to Present." (Tr. 1058.)  However, the records received from Lakeland Regional appear to be from 2022 exclusively.  *See* (Tr. 1063–126.)  Under the applicable regulations, if the requested records are not received after the SSA's initial request, the SSA "will make one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 416.912(b)(1).  Despite not receiving the requested records, it appears that no follow-up request was made nor is there evidence to suggest that the ALJ requested those records from Plaintiff.  *Cf. Ellison*, 355 F.3d at 1276 ("[T]he record reveals that the ALJ did attempt to develop the medical record by

requesting on two occasions that Ellison furnish him with the 1999 and 2000 medical records, but Ellison failed to do so.").

As discussed above, Plaintiff testified at the hearing regarding the effects of her traumatic brain injury and resulting surgery and the record repeatedly reflects that condition. *See* (Tr. 51, 54–55); *e.g.*, (Tr. 654, 658, 661, 669, 914, 938.)  The court agrees with Plaintiff that the ALJ appears to have found those records relevant by requesting medical records dating to 2010.  (Tr. 1058.)  Defendant argues that sufficient evidence existed in the record for the ALJ to make an informed decision, including that "[t]wo state agency medical consultants reviewed the evidence of record in December 2021." (Dkt. 18 at 13 (citing Tr. 93–100).)  However, with respect to Plaintiff's traumatic brain injury, Defendant also argues that the ALJ's findings were supported by the state agency medical consultant's conclusions, including that "there was no imaging or medical evidence surrounding the traumatic brain injury or current impairment from that[.]"  (*Id.* at 11.)  Thus, without the records initially requested by the ALJ, there appears to be an evidentiary gap in the record that prejudices Plaintiff.  *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1270 (11th Cir. 2015) ("The underdeveloped record presents evidentiary gaps that make assessment of Henry's physical limitations unfair and clearly prejudicial."); *Cooper v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:15-cv-864-J-MCR, 2017 WL 1135088, at *4 (M.D. Fla. Mar. 27, 2017) ("The ALJ's failure to sufficiently probe the facts regarding the missing mental health records is prejudicial in light of the evidentiary gaps presented in the record.").

Accordingly, and in light of the above finding requiring remand for further consideration of Plaintiff's RFC, the ALJ should take additional steps on remand to procure Plaintiff's relevant medical records in accordance with the regulations. *See* 20 C.F.R. § 416.912.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is **ORDERED**:

1. The decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this order.

2. The Clerk of Court is directed to enter final judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Tampa, Florida, on February 29, 2024.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record

- 22 -